IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

OCT 18 2012

COURT OF APPEALS
DIVISION TWO



GINA MARIE MAHAR,    )
                     )    2 CA-CV 2012-0060
      Plaintiff/Appellee,  )    DEPARTMENT A
                     )
v.                   )    O P I N I O N
                     )
HECTOR ACUNA II,     )
                     )
      Defendant/Appellant.  )
                     )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. DV20120168

Honorable David R. Ostapuk, Judge Pro Tempore

AFFIRMED IN PART; VACATED IN PART

Natasha Wrae                                            Tucson
                                  Attorney for Defendant/Appellant

E C K E R S T R O M, Presiding Judge.

¶1      This appeal concerns an order restricting the right of the appellant, Hector

Acuna, to possess a firearm.  The trial court issued this formal order, which was entitled

"Notice to Sheriff of Positive Brady Indicator" (hereafter "Brady notice"),[1] along with an

_____

    [1]The Brady notice refers to the federal Brady Handgun Violence Prevention Act,
Pub. L. No. 103-159, 107 Stat. 1536 (1993), but the substance of the document relates to
the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322,

order of protection in favor of the appellee, Gina Mahar, after a hearing at which both parties testified. On appeal, Hector maintains the court erred by entering the Brady notice without finding a sufficient legal basis to support it. Because we agree the firearms restriction is either unsupported by the record or legally erroneous, we vacate the court's order prohibiting Hector from possessing firearms or ammunition.

## Factual and Procedural Background

¶2　　　We view the evidence in the light most favorable to upholding the trial court's ruling. *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, ¶ 2, 263 P.3d 69, 71 (App. 2011). Hector and Gina's marriage, which produced children, was dissolved by a Pima County Superior Court decree. Hector is a federal Border Patrol agent and is remarried to Guadalupe Acuna.

¶3　　　In late January 2012, Gina filed a petition for an order of protection against Hector—as well as a petition for an injunction prohibiting harassment by Guadalupe—based on an incident that had occurred earlier that week.[2] In the petition against Hector, Gina alleged she had been involved in a verbal altercation with the Acunas that became physically violent when Guadalupe punched Gina. The petition further alleged Hector had committed "custodial interference" during the encounter by refusing to return physical custody of their eldest daughter to Gina. In the same petition, Gina specifically

---

§ 110401, 108 Stat. 1796, which amended portions of the Gun Control Act of 1968. *See generally United States v. Sanchez*, 639 F.3d 1201, 1203 (9th Cir. 2011); *Martin v. Schroeder*, 209 Ariz. 531, ¶ 20, 105 P.3d 577, 582 (App. 2005).

[2]Although Guadalupe is not a party to this appeal, her involvement below is relevant to the factual and procedural background of the case.

requested that the trial court prohibit Hector from possessing firearms or ammunition based on "the risk of harm" he posed.

¶4        At the ex parte hearing on the petitions, the superior court declined to issue any orders, because a petition to modify child custody was still pending before the court. The court then transferred the case to a different division and scheduled a hearing for February 2, 2012.[3]

¶5        At the February hearing on Gina's petitions, she testified she and the Acunas had met outside her apartment complex on the day in question to discuss issues related to the children. According to Gina, Hector had yelled at her and had "verbally abus[ed]" her, calling her a "whore who lives on welfare." Guadalupe then began pushing Gina. Hector got between the two women in an effort to keep them apart, but Guadalupe threw a punch over his shoulder that hit Gina in her jaw. Gina did not claim that Hector had physically assaulted her during the incident. Law enforcement officers responded to Gina's call for assistance and cited Guadalupe for assault.

¶6        Gina went to a hospital later that day, and an emergency room report she introduced at the hearing showed she had suffered a facial contusion. Guadalupe's punch also had cracked one of Gina's teeth. In their testimony, the Acunas agreed that a heated verbal exchange had occurred in the parking lot and that Hector had come between Gina and Guadalupe in an effort to separate them. But the Acunas denied Gina had been struck or insulted in the manner she had described.

---

[3]Judge Frederic J. Dardis presided over the ex parte hearing. Judge David R. Ostapuk presided over the subsequent hearing and issued the orders relevant to this appeal.

¶7 The trial court, which had been involved in child-custody matters between Gina and Hector in the past and had reviewed their dissolution file, stated at the hearing that the parties shared joint legal custody of their children and had agreed to "split physical custody arrangements." According to Gina's testimony, their then sixteen-year-old daughter had been present at the meeting in the parking lot and was living with Gina at the time of the incident. Although Gina did not provide any additional details at the hearing about how the custodial interference had occurred, she restated the claim in her petition that Hector had refused to return the daughter to Gina, which she believed to be custodial interference. Hector denied that he had refused to return the daughter. By the Acunas' account, the daughter had been crying and trying to get behind the Acunas because she was scared of Gina and did not want to go back to her, which then had caused the situation to escalate.

¶8 The parties made no reference to firearms during the hearing. Nevertheless, at its conclusion, the trial court stated as follows:

> [T]he Court finds reasonable cause has been shown that, absent the issuance of an Order of Protection, domestic violence may occur and, thus, it is granting the Petition for an Order of Protection.
>
> . . . .
>
> [The] Court[,] having conducted a hearing at which the parties are present, [finds] *Brady* now applies and, thus, the Court will sign the appropriate *Brady* notice. . . . Consequently, the Defendant, Hector, shall not possess, purchase or receive firearms or ammunition for [the one-year] period . . . of the Order.

4

¶9 Hector objected to this aspect of the order, pointing out that his employment required him to carry a firearm. He also stated, "I didn't do anything to [Gina]. I didn't touch her. . . . I just got in between my wife and . . . my ex-wife." The trial court refused to modify its order on these grounds, explaining:

> This is one of the consequences, unfortunately, of the kind of conduct that you and Guadalupe were engaged in on January 22, 2012. . . . You were yelling and creating a domestic violence situation, and your wife, I believe, the credible evidence is, reached across you and punched your ex-wife in the jaw. This is not a good thing for you to have participated in.

When Guadalupe stated that Hector "didn't participate," the court responded, "Lesson learned."

¶10 In the order of protection the trial court entered the same day as the hearing, the court did not restrict Hector's right to possess firearms. Rather, the court left blank the portion of the form related to firearms restrictions.[4] In the separately filed Brady notice, however, the court "disqualified" Hector "from purchasing or possessing a firearm or ammunition" based upon his meeting the criteria set forth in 18 U.S.C. § 922(g)(8). Both documents were signed and entered on February 2, 2012. Hector filed a notice of appeal from the "Order of Protection" on March 1, 2012.

---

[4]The form includes an empty checkmark box next to the following text: "**FIREARMS.** Because Defendant poses a credible threat of bodily injury to Plaintiff or Protected Person(s), Defendant shall not possess, receive, or purchase firearms or ammunition and shall surrender same within 24 hours of service to: _____."

5

**Jurisdiction**

¶11        Despite the curious formal aspects of the trial court's separate orders, we conclude we have jurisdiction over the present appeal and may reach the questions Hector raises relating to the trial court's firearms prohibition. Normally, an appeal from a final "judgment," as it is defined in Rules 54(a) and 58(a), Ariz. R. Civ. P., allows an appellate court to review "all orders . . . assigned as error" in the proceeding. A.R.S. § 12-2102(A); *see* A.R.S. § 12-120.22(A). Here, the trial court prohibited Hector from possessing firearms in the course of a protective-order proceeding that was commenced in the superior court pursuant to A.R.S. § 13-3602(A). Furthermore, the court apparently issued this order in response to Gina's specific request. We therefore find the Brady notice or disqualification order to be encompassed within the "judgment"—that is, the signed order of protection—which is appealable to this court pursuant to A.R.S. § 12-2101(A)(1) and Rules 9(A)(2) and 9(B)(2), Ariz. R. Prot. Order P. We additionally conclude that the orders may be appealed under § 12-2101(A)(5)(b), as orders "[g]ranting . . . an injunction." *Cf. LaFaro v. Cahill*, 203 Ariz. 482, ¶¶ 7-8, 56 P.3d 56, 58-59 (App. 2002) (permitting appeal of injunction against harassment).

¶12        The fact that Hector's notice of appeal refers only to the "Order of Protection" rather than the Brady notice is inconsequential. Insofar as the order prohibiting Hector from possessing firearms was included in the final judgment that is appealable under § 12-2101(A)(1), no further specificity was required in the notice of appeal. And assuming arguendo the Brady notice was an order appealable separately under § 12-2101(A)(5)(b), any defect in the notice would be harmless because it neither

6

misled nor resulted in any prejudice to Gina. *See Hill v. City of Phoenix*, 193 Ariz. 570, ¶ 10, 975 P.2d 700, 702 (1999) (specifying test for determining sufficiency of notice of appeal); *see also Gutierrez v. Gutierrez*, 193 Ariz. 343, ¶ 30, 972 P.2d 676, 683 (App. 1998) (observing notices of appeal liberally construed whenever possible). The Acunas indicated at the hearing, in Gina's presence, that they intended to appeal the trial court's order because the firearms restriction presented a problem for Hector's continued employment. Since then, Gina has filed documents in this court but has raised no objection either to the notice of appeal or the opening brief. We therefore conclude the notice is adequate and timely, and our jurisdiction is proper. *See* A.R.S. § 12-120.21(A).

## Discussion

**¶13**        On appeal, Hector maintains the trial court did not make the necessary findings to support a restriction of his gun rights under either Arizona law or the Brady Act. He further contends the court did not follow the procedural rules relating to firearms restrictions.

**¶14**        We review a trial court's order granting an injunction for a clear abuse of discretion. *LaFaro*, 203 Ariz. 482, ¶ 10, 56 P.3d at 59. A court abuses its discretion when it commits an error of law in the process of reaching a discretionary conclusion or "'when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision.'" *Hurd v. Hurd*, 223 Ariz. 48, ¶ 19, 219 P.3d 258, 262 (App. 2009), *quoting State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, ¶ 14, 66 P.3d 70, 73 (App. 2003). "[W]e review the application of

7

Arizona and federal law to the facts *de novo*." *Bell v. Smitty's Super Valu, Inc.*, 183 Ariz. 66, 67 n.1, 900 P.2d 15, 16 n.1 (App. 1995).

¶15        In general, a trial court may issue an order of protection if it finds "reasonable cause" to believe "[t]he defendant may commit an act of domestic violence." § 13-3602(E)(1). A different standard applies, however, when a defendant's right to possess firearms under the Second Amendment to the United States Constitution or under article II, § 26 of the Arizona Constitution is implicated in the proceeding. When a court issues an order of protection, it may prohibit the possession of firearms "[i]f the court finds that the defendant is a credible threat to the physical safety of the plaintiff or other specifically designated persons." § 13-3602(G)(4).[5] Firearms restrictions in the federal Gun Control Act likewise are triggered by a protective order only if the order "includes a finding that [the] person represents a credible threat to the physical safety of [the] intimate partner or child," 18 U.S.C. § 922(g)(8)(C)(i), or if the order "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii).[6]

---

[5]The preliminary seizure of firearms by law enforcement officials is addressed separately by A.R.S. § 13-3601(C) through (F) and may last only six months.

[6]A co-parent or former spouse falls within the definition of an "intimate partner" under federal law. 18 U.S.C. § 921(a)(32). In Arizona, orders of protection are "limited to parties with specified relationships between them." Ariz. R. Prot. Order P. 1(B)(2)(d). But the relationship element is not at issue in this case. *See* A.R.S. §§ 13-3601(A)(1), (2), 13-3602(A), (C)(4).

¶16 Here, the order of protection concerns only Hector and Gina; no other family members or protected persons are listed in it. The order is also a general no-contact order that does not include any explicit prohibition of "the use, attempted use, or threatened use of physical force" against Gina.[7] *Id.*; *see* § 13-3602(G)(1) (permitting court to "[e]njoin the defendant from committing a violation of one or more of the offenses included in domestic violence"); *see also* Ariz. R. Prot. Order P. 6(C)(5)(a) (allowing general no-contact orders). A no-contact order that lacks such a specific provision does not result in firearms restrictions under § 922(g)(8)(C)(ii). *United States v. Sanchez*, 639 F.3d 1201, 1205 (9th Cir. 2011). And there would be no basis for such an express prohibition here.

¶17 The record is devoid of any evidence that Hector threatened or used force against Gina. In fact, Gina's testimony confirms he tried to prevent a physical altercation even though he yelled at and insulted her during their argument. The record similarly lacks any evidence that would support a finding Hector presented a "credible threat" to Gina's "physical safety" under § 13-3602(G)(4) or § 922(g)(8)(C)(i).[8] Accordingly, the trial court's order prohibiting the possession of firearms lacked any evidentiary support in the record.

---

[7]The only exception provided is that Hector and Gina may communicate through electronic mail or facsimile.

[8]Assuming the record provides reasonable cause to believe Hector had engaged in or would engage in custodial interference, *see* A.R.S. § 13-1302, which A.R.S. § 13-3601(A) defines as domestic violence, the record provides no support for the additional findings concerning physical safety required under subsection (G)(4) of § 13-3602 to prohibit Hector from possessing firearms.

¶18 This dearth of evidence stems, in part, from the trial court's failure to follow the procedures set forth in our statutes and rules concerning firearms restrictions in protective-order proceedings. Before a court may restrict the possession of firearms or ammunition, Rule 6(C)(5)(d) provides that "[t]he judicial officer shall ask the plaintiff about the defendant's use of or access to weapons or firearms." The purpose of the rule is explained as follows: "This inquiry shall be made to determine if the defendant poses a credible threat to the physical safety of the plaintiff or other protected persons." *Id.* Section 13-3602(G)(4) then specifies the mandatory procedures for transferring firearms if a restriction is imposed: "If the court prohibits the defendant from possessing a firearm, the court shall also order the defendant to transfer any firearm owned or possessed by the defendant immediately after service of the order to the appropriate law enforcement agency for the duration of the order."

¶19 Here, the trial court did not follow these procedures or issue any transfer order, although service of the order of protection occurred at the hearing. This suggests the court overlooked the relevant laws; applied an incorrect legal standard, using the "reasonable cause" test under § 13-3602(E) rather than the "credible threat" test under § 13-3602(G)(4); or based its decision on the erroneous legal assumption that firearms restrictions automatically result from an order of protection. *See Sanchez*, 639 F.3d at 1204-05 (holding federal restrictions of firearms rights not triggered by general no-contact order). Any one of these legal errors would account for the lack of evidence in the record supporting the court's order. But whatever the precise nature of the error here,

an abuse of discretion has been established on the record before us. *See Hurd*, 223 Ariz. 48, ¶ 19, 219 P.3d at 262.[9]

¶20 Although the trial court's orders simply may represent an understandable impulse to err on the side of caution and safety, an order of protection requires a court to be attentive to the details of the evidence presented and the relationships of the parties. The statutes and procedural rules concerning orders of protection expressly prohibit petitions against more than one defendant, *see* § 13-3602(B)(3), and they require specificity in both the allegations, *see* § 13-3602(C)(3), and determinations relating to domestic violence. *See* Ariz. R. Prot. Order P. 6(C)(3)(a)(1) (requiring court to consider "specific acts of domestic violence"). A separate reasonable cause determination is required for the "plaintiff individually, any children with whom the defendant has a legal relationship and any other person listed in the petition." Ariz. R. Prot. Order P. 6(C)(3)(a)(2). Moreover, orders concerning firearms should be based on a court's assessment of credible threats of physical harm by the specific person whose rights would be affected by the order. *See* § 13-3602(G)(4); Ariz. R. Prot. Order P. 6(C)(5)(d). Our statutes do not authorize their use to discourage people from yelling or engaging in "harassment" of the type proscribed by A.R.S. § 12-1809(R). Nor do our statutes

---

[9]Hector also has challenged the trial court's firearms order on the ground that the order of protection did not expressly restrain him from harassing, stalking, or threatening Gina or the children, which would be required by § 922(g)(8)(B) for the federal act to apply. *See Sanchez*, 639 F.3d at 1204 (discussing "distinct sub-elements" for "court order to meet the requirements of § 922(g)(8)"). Because we have resolved the appeal on other grounds, we need not address this issue.

11

authorize the use of firearms restrictions to provide incentives for positive behavior or to teach people a "[l]esson" about civilized conduct.

¶21 Despite Gina's appearance in this court, she has not filed an answering brief in this appeal. We may treat an appellee's failure to file a brief as a confession of reversible error as to any debatable issue. *See Cardoso v. Soldo*, ___ Ariz. ___, n.1, 277 P.3d 811, 813 n.1 (App. 2012); *Guethe v. Truscott*, 185 Ariz. 29, 30, 912 P.2d 33, 34 (App. 1995). In light of the legal errors we have found and the lack of evidence supporting the firearms restrictions here, we exercise our discretion and deem Gina's failure to file a responsive brief as a confession that Hector is entitled to the relief he seeks on appeal.

**Disposition**

¶22 As a remedy, Hector has requested that we vacate the Brady notice and restore his constitutional right to possess firearms. He has not otherwise challenged the order of protection. Accordingly, we vacate all orders restricting Hector's firearms rights in this proceeding, including the signed document entitled "Notice to Sheriff of Positive Brady Indicator." The remainder of the order of protection is affirmed.

/s/ _Peter J. Eckerstrom_
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ _Joseph W. Howard_
JOSEPH W. HOWARD, Chief Judge

/s/ _J. William Brammer, Jr._
J. WILLIAM BRAMMER, JR., Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed August 15, 2012.

12