NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT J. NICAISE, JR., *Petitioner/Appellee,*

*v.*

APARNA SUNDARAM, *Respondent/Appellant.*

No. 1 CA-CV 17-0518
FILED 9-27-2018

Appeal from the Superior Court in Maricopa County
No. FC2017-092498
The Honorable Richard J. Hinz, Commissioner

**AFFIRMED IN PART AND VACATED IN PART**

COUNSEL

Horne Slaton, PLLC, Scottsdale
By Sandra L. Slaton, Matthew J. Monaco
*Counsel for Respondent/Appellant*

Law Offices of Karla L. Calahan, P.C., Scottsdale
By Karla L. Calahan
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1         Aparna Sundaram timely appeals from an order of protection in favor of Robert Nicaise, Jr., and the subsequent denial of her motion for new trial. The order of protection has since expired, but we conclude Sundaram's appeal is not moot and address her arguments on appeal. We affirm the superior court's order of protection but vacate the attendant Notice of Brady Indicator.

## BACKGROUND

¶2         Sundaram and Nicaise have a minor child in common and have had a tumultuous co-parenting relationship. While in a doctor's office with their minor child in February 2017, there were two separate incidents between Sundaram and Nicaise: During the first incident in the lobby, Sundaram used her cell phone to video-record Nicaise while he repeatedly asked her to stop; during the second incident in the exam room, Sundaram went into a "rant" about Nicaise's behavior in front of the doctor. Sundaram later petitioned for and obtained a protective order against Nicaise.[1] Nicaise then filed a petition for a protective order against Sundaram, basing his petition in part on the two incidents in the doctor's office.

¶3         In April 2017, the superior court held a combined evidentiary hearing concerning both Sundaram's existing order and Nicaise's petition. After hearing testimony from both Sundaram and Nicaise, the superior court continued the protective order against Nicaise and granted the petition for a protective order against Sundaram, simultaneously issuing a Notice of Brady Indicator against Sundaram. Mother filed a motion for new trial/amended judgment, which the superior court denied.

---

[1]         Sundaram's protective order against Nicaise is not at issue in this appeal.

**DISCUSSION**

**¶4**   Sundaram makes three arguments on appeal: (1) the superior court erred by ruling that her conduct during the second incident in the doctor's office constituted harassment under A.R.S. § 13-2921; (2) the superior court denied Sundaram due process by "pre-determining the matter" before she had given all of her testimony; and (3) the superior court erred by applying the Brady Act against Sundaram because there was no credible threat of violence during the incident. She asks that we reverse and vacate the order of protection, or alternatively, reverse and remand for a new trial. Additionally, Nicaise contends that the expiration of the protective order Sundaram now contests rendered her appeal moot.

**¶5**   "It is well settled that the issuance of an order of protection is a very serious matter," and one that we review for an abuse of discretion. *Savord v. Morton*, 235 Ariz. 256, 259, ¶¶ 10-11 (App. 2014). The superior court "abuses its discretion when it makes an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the . . . court's decision, is devoid of competent evidence to support the decision." *Id.* at 259, ¶ 10 (citation omitted). We review constitutional and purely legal issues de novo. *State v. Moody*, 208 Ariz. 424, 445, ¶ 62 (2004).

**I.**  **Sundaram's appeal is not moot.**

**¶6**   The superior court issued the protective order against Sundaram on April 13, 2017, and a protective order expires one year after service on the defendant, A.R.S. § 13-3602(K). Because the protective order at issue has expired, we first consider the preliminary question of whether to dismiss Sundaram's appeal as moot. *See Cardoso v. Soldo*, 230 Ariz. 614, 616-17, ¶ 5 (App. 2012).

**¶7**   "A decision becomes moot for purposes of appeal where[,] as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties." *Vinson v. Marton & Assoc.*, 159 Ariz. 1, 4 (App. 1988). The question of mootness, however, is a matter of prudential restraint subject to our discretion. *Cardoso*, 230 Ariz. at 616-17, ¶ 5. Among other exceptions, we may review an otherwise moot order if a party may continue to suffer collateral consequences stemming from that order. *Id.* at 616-17, ¶¶ 5-7, 9.

**¶8**   Sundaram may continue to suffer collateral consequences stemming from the issuance of the now-expired protective order. The potential consequences include the expired order's consideration by a court

in deciding whether to issue any subsequent orders of protection, its ongoing significance in disputes over joint custody of a minor child, and harm to Sundaram's reputation, among others. *See id.* at 618-19, ¶¶ 10-14. We are unpersuaded by Nicaise's argument that any other protective orders which may have previously been issued between these parties give only a marginal effect to the collateral consequences stemming from this particular order. Accordingly, we conclude Sundaram's appeal is not moot.

## II. The superior court did not err by finding that Sundaram harassed Nicaise.

¶9 Sundaram first argues the superior court erred by determining that her "rant" during the second incident in the doctor's office constituted harassment, which the court used as the basis for the protective order. *See* A.R.S. § 13-3602(A), (E); § 13-3601(A) (listing the offenses, including harassment, that may constitute domestic violence and justify the issuance of an order of protection). We disagree.

¶10 In relevant part, a person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:

> 1. Anonymously or otherwise contacts, communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.
>
> . . .
>
> 3. Repeatedly commits an act or acts that harass another person.

A.R.S. § 13-2921(A). The statute further clarifies that "harassment" is "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person." A.R.S. § 13-2921(E).

¶11 During the combined evidentiary hearing, Nicaise provided testimony regarding the two incidents at the doctor's office in February 2017. He described the first incident to the court as follows:

> I do the right thing, invite her to attend a medical appointment during my parenting time. I get there, and she

starts camcording me, which she knows hits my buttons. . . . I ask her to stop; she refuses, nastily refuses. . . . I go again and try to get her to stop. It includes waving my hand in front of her cell phone. I never took possession of her cell phone and I never did anything to it.

Regarding the second incident, Nicaise testified:

We then get back into an exam room. We both threw down a cool down period, get into an exam room, and she goes into a rant about my mental health, labeling me as a schizophrenic, bipolar in front of the doctor -- compromising the doctor's ability to accomplish what he's there . . . to do, and that is to evaluate and treat our daughter. She did this not just in front of me and the doctor. She did it in front of our daughter, no matter the court order that was only five days old . . . .

¶12　　　　　After the close of evidence, the court explained its ruling on Nicaise's petition for an order of protection from the bench. The court found that (1) Sundaram videotaping Nicaise did not constitute assault and that Nicaise had therefore failed to prove an act of domestic violence by that allegation, but (2) Nicaise had proven Sundaram's "rant" was an act of domestic violence under the harassment statute: "The Court finds that that was done solely for the purpose of harassing or disturbing [Nicaise]. . . . Harassment is, 'Repeatedly commits an act or acts that harass another person'. The Court does find that the discussions in the conference room violate that particular provision of A.R.S. 13-2921."

¶13　　　　　Sundaram later filed a motion for a new trial/amended judgment, arguing that her "rant" did not meet the statutory definition of "repeatedly commit[ting] an act or acts that harass another person." The superior court denied Sundaram's motion, explaining that:

[D]espite the fact that the Court isolated that specific definition of harassment, Sundaram conveniently ignores the remainder of the statutory definition of harassment. Harassment also occurs when one ". . . contacts, communicates, or causes a communication with another person by verbal . . . means in a manner that harasses." A.R.S. § 13-2921(A)(1). . . . *Here, although the Court did not isolate the alternative definition of harassment in the statute, the evidence clearly supported granting the Order of Protection* based on the evidence and the application of that statute.

(Emphasis added). Sundaram now argues the superior court erred because Nicaise's testimony did not provide enough evidence to meet the third statutory definition of harassment, "[r]epeatedly commit[ting] an act or acts that harass another person." A.R.S. § 13-2921(A)(3). We need not address Sundaram's arguments regarding the third definition of harassment, however, because the evidence clearly supports a finding of harassment under the first definition outlined in section (A)(1) of the statute.

¶14        To refute a finding of harassment under the first definition, Sundaram first argues that her "rant" was not actually directed at Nicaise, but rather that it was directed at the doctor and was merely about Nicaise. This argument is unsupported by the record and we reject it. The superior court was free to infer—particularly given Nicaise's description of the first incident in the lobby preceding her "rant" in the exam room—that Sundaram was aware of the effect her words would have on Nicaise. Sundaram provided no testimony that her comments were directed solely at the doctor, nor that she sought a private audience with the doctor to express any legitimate concerns about Nicaise's behavior in relation to his ability to care for the child and identify any medical concerns relating to the child.

¶15        To further attempt to refute a finding of harassment under the first definition, Sundaram argues Nicaise provided no evidence that her "rant" in fact harassed him. Again, this argument is not supported by the record. Nicaise testified that "even when she was [ranting], I pointed out to her that she's violating the minute entry that was only five days old . . . [and] [t]he judge down the hall here is very adamant that we shouldn't be doing these antics and charades in front of our daughter," from which the superior court could infer that he found her behavior inappropriate and annoying and wanted her to stop.

¶16        We view the evidence in the light most favorable to sustaining the superior court's order, reversing only when the record is devoid of competent evidence to support it. *Savord*, 235 Ariz. at 259, ¶ 10. Because the record here contains competent evidence supporting the court's finding of harassment, we discern no error.

### III.     The superior court did not deprive Sundaram of due process by "pre-determining the matter" prior to hearing all of the evidence.

¶17        Sundaram argues the superior court erred as a matter of law by denying her due process when it "pre-determin[ed] the matter" before

Sundaram had the opportunity to respond to Nicaise's allegations. Her argument is without merit.

¶18           According to the superior court's instructions at the beginning of the combined evidentiary hearing, the hearing proceeded as follows: Sundaram testified first concerning her protective order against Nicaise; Nicaise, representing himself, cross-examined Sundaram; and Sundaram underwent redirect examination. Nicaise then had the opportunity to both respond to Sundaram's allegations and present his own case-in-chief concerning his pending petition for a protective order against Sundaram. After cross-examining Nicaise, Sundaram's counsel asked to put Sundaram back on the witness stand, to which the court responded: "Counsel, for purposes of rebuttal, I'm going to allow just a few questions. . . . I've probably heard enough of the evidence at this point to make a determination in any case." Sundaram then underwent further redirect examination.

¶19           In this context, informing the parties of the court's preliminary view that it had likely heard enough evidence to arrive at a determination of the issues was not improper and does not establish that the court "had predetermined the outcome by stating a fixed opinion." The cases Sundaram cites do not alter our analysis. *See Cravens, Dargan & Co. v. Superior Court*, 153 Ariz. 474, 476 (1987) ("No rule of civil procedure authorizes a trial court to grant its own *sua sponte* request for judgment without giving notice and an opportunity to be heard to the opposing party."); *see also Matthews v. Harney County School Dist. No. 4*, 819 F.2d 889, 893-94 (9th Cir. 1987) (holding that a jury could reasonably find that a teacher called into a meeting only after the school board had already voted in favor of dismissal was a meaningless pre-termination opportunity to respond). The superior court has broad discretion in managing the conduct of a trial, *State v. Cornell*, 179 Ariz. 314, 332 (1994), and the record does not reflect that the court precluded any specific line of questioning or actually reached its final decision without considering all of the evidence ultimately offered.

## IV.    The superior court erred by applying the Brady Act against Sundaram.

¶20           Finally, Sundaram argues the superior court erred as a matter of law by applying the federal Brady Act against her because there was no evidence presented that she posed a credible threat of physical violence to Nicaise. We agree.

¶21	The Brady notice against Sundaram was issued pursuant to federal law, explicitly stating that the protective order "appears to meet the criteria established in the Violent Crime Control and Law Enforcement Act of 1994 (18 U.S.C. § 922)." This federal statute prohibits the subject of a protective order from possessing firearms if the protective order "includes a finding that [the] person represents a credible threat to the physical safety of [an] intimate partner or child," 18 U.S.C. § 922(g)(8)(C)(i), or "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against [an] intimate partner or child that would reasonably be expected to cause bodily injury," 18 U.S.C. § 922(g)(8)(C)(ii); *see also Mahar v. Acuna*, 230 Ariz. 530, 534, ¶ 15 (App. 2012). Sundaram does not dispute that she and Nicaise were "intimate partners," *see* 18 U.S.C. § 921(a)(32), and the protective order issued against Sundaram included language comporting with section (C)(ii) of the statute: "[Sundaram] shall not commit any crimes, including but not limited to harassment, stalking, or conduct involving the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury against [Nicaise]."

¶22	As Sundaram notes, however, Arizona law still required the superior court to conduct a specific inquiry into whether she posed a credible threat to Nicaise's physical safety. Pursuant to A.R.S. § 13-3602(G)(4), "[a] firearm restriction under the federal [Brady] Act is triggered by an order of protection only if the order includes a finding that [the] person represents a credible threat to the physical safety of [the] intimate partner or child." *Savord*, 235 Ariz. at 260, ¶ 20 (citations omitted). "A restriction against firearms does not automatically follow an order of protection," *id.* at 260, ¶ 22, and Rule 23(i)(1) of the Arizona Rules of Protective Order Procedure requires the court to "ask the plaintiff about the defendant's use of or access to firearms to determine whether the defendant poses a credible threat to the physical safety of the plaintiff or other protected persons."

¶23	The superior court failed to conduct the required inquiry regarding Sundaram's access to firearms, and the record lacks evidence concerning Sundaram threatening any physical violence toward Nicaise. Therefore, we vacate the Notice of Brady Indictor.

## CONCLUSION

**¶24** We affirm the superior court's order of protection against Sundaram but vacate the attendant Brady Notice.



AMY M. WOOD • Clerk of the Court
FILED: AA