NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

TIARA SALAZAR, *Plaintiff/Appellee*,

*v.*

NIGUEL ANAYA GUEVARA, *Defendant/Appellant*.

No. 1 CA-CV 18-0443 FC
FILED 3-28-2019

Appeal from the Superior Court in Maricopa County
No.  FC2018-093927
The Honorable Margaret Benny, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

COUNSEL

Tyler Allen Law Firm, Phoenix
By Shannon Peters
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

---

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1        Niguel Guevara ("Father") appeals the trial court's order of protection entered against him on behalf of Tiara Salazar ("Mother") and their two minor children, E.G. (born in 2006) and S.G. (born in 2014). For the following reasons, we modify the order to exclude S.G. and otherwise affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        We view the facts and evidence in the record in the light most favorable to upholding the trial court's decision. *Mahar v. Acuna*, 230 Ariz. 530, 532, ¶ 2 (App. 2012). Mother and Father are the parents of E.G. and S.G. The parents share parenting time with the children. In June 2018, Father was arrested on the suspicion he punched the older child, E.G., in the face with a closed fist. Father eventually was released without charges being filed. Mother then petitioned the superior court for an order of protection, requesting that the order cover her, E.G., and S.G., at her home and the children's schools. The court granted Mother's petition *ex parte* and Father requested a hearing.

¶3        At the hearing, Mother testified she learned about the punching incident from the Department of Child Safety ("DCS"). Mother further testified that on the weekend in question, she was waiting for Father to return the children after his parenting time and, when she texted Father's mother, rather than reveal he had been arrested, Father's mother stated Father was in the hospital. Mother testified the officer who had arrested Father later told her that E.G. told police that Father had punched him in the face. Mother also testified she believed E.G. lied to DCS about the punching incident when DCS caseworkers interviewed him. Finally, Mother testified the younger child, S.G., was present at the time of the incident, but was unable to report what happened because of his young age.

¶4        To rebut Mother's testimony, Father and his girlfriend, Angelica Luna, testified and Father offered several exhibits into evidence. Luna testified there was a fight between Father and Father's brother,

Andrew, on the evening in question, but that Father never hit E.G. According to Luna, Father became upset with E.G. after E.G. attempted to leave the house with Andrew's son. Father then sent E.G. to bed. At some point, Father and Andrew started fighting while Luna was inside. Though Luna could not say why the police arrived, she testified that the police came in and ordered everyone outside. In front of the house, Luna found E.G sitting in his aunt's van, holding an ice pack and crying because "he was . . . scared." Luna said she did not know who gave E.G. the ice pack.

¶5         Father testified he and Andrew began fighting in the living room after an argument in front of several house guests, including Luna. According to Father, Andrew and his family left the house after the fight but then Andrew's wife began "banging on the door" to try to re-enter the house. Father testified he instructed his brother-in-law, Bryan, not to let Andrew's family back inside because several items in the house had been broken, including a TV. Father added that while Andrew's wife was still "banging on the door," he and everyone else in the house went to sleep, only to be awoken later by the police knocking on the door. Father did not deny that E.G. was holding an ice pack at some point during the evening and could not explain why E.G. had the ice pack. Father also offered in evidence a copy of an "Aftercare Plan" from DCS that stated "cases will be closed / unsubstantiated," apparently in reference to the investigation DCS initiated after it learned of his arrest.

¶6         The court entered a minute entry in which it found by a preponderance of the evidence that Father had committed an act of domestic violence and that good cause existed to continue the *ex parte* order of protection; it accordingly issued an order to the same effect. Father now appeals.

## DISCUSSION

¶7         Father argues the court abused its discretion by failing to make findings and conclusions of law on the record, continuing the order of protection despite insufficient evidence, and including S.G. on the order of protection. Mother did not file an answering brief. Though we could treat her failure to file an answering brief as a confession of error, in our discretion, we decline to do so. *Thompson v. Thompson*, 217 Ariz. 524, 526, ¶ 6, n.1 (App. 2008); *see also* Arizona Rule of Civil Appellate Procedure 15(a)(2).

¶8         On the filing of a verified petition pursuant to Arizona Revised Statutes ("A.R.S.") section 13-3602(A), the court shall issue an order

of protection when it finds reasonable cause to believe the defendant may commit an act of domestic violence or has committed such an act within the past year. A.R.S. § 13-3602(E). "Domestic violence" is defined by statute and includes assault as defined in section 13-1203. A.R.S. § 13-3601(A). A person commits assault, as relevant here, by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person" or by "[k]nowingly touching another person with the intent to injure." A.R.S. § 13-1203(A).

¶9        We review an order of protection for abuse of discretion. *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10 (App. 2014). "A trial court abuses its discretion when it makes an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Id.* (internal quotation marks and citation omitted).

¶10       After hearing the testimony, the court found on the record that there were "sufficient grounds" to continue the order of protection. In its subsequent minute entry, the court found "that [Father] has committed an act of domestic violence against Plaintiff within the last year or may commit an act of domestic violence in the future." Father argues the trial court erred by merely stating that it had found "sufficient grounds" to continue the order of protection. Instead, Father contends the court was required to expressly find Father had committed an act of domestic violence because Arizona Rule of Protective Order Procedure 38(h) requires a court to "state the basis for continuing" a protective order. The only incident alleged in Mother's petition, and the only incident at issue during the hearing, was that Father punched E.G. in the face. By finding on the record that sufficient grounds existed to continue the order, the court implicitly found that, by a preponderance of the evidence, Father had hit E.G.

¶11       Father next argues there was insufficient evidence to support the court's decision to uphold the order of protection. At the hearing, the parties presented conflicting evidence, with Mother testifying that she had heard reports that Father had hit E.G. in the face and Father and Luna testifying Father had not done so. Mother also presented an arrest citation from the Chandler Police Department stating Father had been arrested for, *inter alia*, assaulting an unspecified minor on the night in question. Father presented documents showing that he had not yet been charged with the offenses he had been arrested for, including assault on a minor, and a photograph of an "Aftercare Plan" from DCS noting that "cases will be closed / unsubstantiated." The photographed page from DCS did not indicate which child it was related to, what the "cases" were, or whether

they involved the alleged assault on E.G. However, the DCS Aftercare Plan was dated within 10 days of Father's arrest and noted "co-parenting relationships are non-functional." Father and Luna offered conflicting versions of the night in question, including where the alleged fight between Father and Andrew took place and when the police arrived. Finally, neither Father nor Luna could explain why E.G. was holding an ice pack while the police were present or where E.G. had gotten the ice pack. Because the trial court "is in the best position to judge credibility of witnesses and resolve conflicting evidence," we generally defer to the trial court's findings. *Cardoso v. Soldo*, 230 Ariz. 614, 619, ¶ 17 (App. 2012) (citation omitted). Viewing the evidence in the light most favorable to upholding the trial court's ruling, as we must, the court did not abuse its discretion in continuing the order of protection as to Mother and E.G. *See Mahar*, 230 Ariz. at 532, ¶ 2.

¶12        Father additionally argues S.G., the parties' younger child, should not be included on the order of protection. "A judicial officer cannot include a defendant's child in a protective order unless there is reasonable cause to believe: (A) physical harm may result or has resulted to the child, or (B) the alleged acts of domestic violence involved the child." Ariz. R. Protect. Ord. P. 5(b)(1). Moreover, before granting a protective order prohibiting contact between a parent and child, "the judicial officer must consider: (1) whether the child may be harmed if the defendant is permitted to maintain contact with the child, and (2) whether the child may be endangered if there is contact outside the presence of the plaintiff." Ariz. R. Protect. Ord. P. 35(b). Nothing in the record indicates the trial court considered Father's relationship with S.G., and there is no evidence or allegation that Father committed an act of domestic violence against S.G. The trial court abused its discretion in continuing the order of protection as to S.G. in the absence of evidence regarding harm or potential future harm to S.G. Accordingly, we vacate the order of protection as to S.G. only.

## CONCLUSION

¶13        For the foregoing reasons we modify the order of protection to remove S.G. and otherwise affirm the order.

¶14        On appeal, Father requests his costs and attorney's fees. In our discretion we decline to award Father his attorney's fees. Father has not been charged a filing fee for filing this appeal. Because Father partially prevailed, however, we award him his remaining taxable costs, if any, on

compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA