NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ARIEL HARTER, *Petitioner/Appellee,*

*v.*

JONATHAN MOLINA, *Respondent/Appellant.*

No. 1 CA-CV 19-0579 FC
FILED 3-17-2020

Appeal from the Superior Court in Maricopa County
No. FC2019-095353
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Ariel Harter, Phoenix
*Petitioner/Appellee*

Jonathan Molina, Chandler
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

¶1 Jonathan Molina (father) appeals the superior court's order of protection filed by Ariel Harter (mother). Father challenges the grounds for the order of protection and the Notice to Sheriff of Positive Brady Indicator (the Brady Notice). Because the superior court did not abuse its discretion, this court affirms the decision.

## FACTUAL AND PROCEDURAL HISTORY

¶2 This court views the facts in the light most favorable to upholding the superior court's ruling. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 63, ¶ 2 (App. 2011). On September 16, 2017, father and mother married. Father and mother have one child in common, LM. Mother also has two children from prior relationships, VS, and JH. On October 1, 2018, mother filed a Petition for Dissolution of Marriage with Minor Children (divorce).

¶3 On July 3, 2019, mother appeared before the superior court in an *ex parte* hearing to request a protective order against father on behalf of herself and LM. At the hearing, mother said she believed father was having her followed. Mother also said father "hired a private investigator to dig up police calls" from her background.

¶4 The superior court found mother established the need for an order of protection. At the conclusion of the hearing, the superior court issued a protective order for LM and mother. The superior court further ordered father to surrender all firearms in his possession to the Maricopa County Sheriff's Office. Father was served on July 3, 2019.

¶5 After service, father requested a hearing to contest the protective order. On July 24, 2019, both parties appeared before the superior court for a contested hearing on the protective order.

¶6 Mother testified at the hearing. She said father relapsed on alcohol immediately after their separation and sent mother verbally abusive

text messages at all hours, day and night. She said father verbally abused her on several occasions. This verbal abuse escalated to the point where father was contacting mother's friends, family, and at one point, the father of one of her other children. Mother also reasserted the allegation father hired someone to follow her.

¶7　　　　Mother also described a specific event when father displayed his firearm. Mother and father got into a fight one evening. Mother said she went upstairs and saw father had his gun out on the bed. Mother asked father what he was doing with the gun, and he said, "don't test me."

¶8　　　　In his defense father said during the fight mother "tore apart the kitchen" and screamed at her toddler. Father said because of mother's behavior he decided to remove the gun from the home. Father took the gun out of the home in a backpack and put it in a public storage unit down the street. He then gave the storage unit key to his mother and her boyfriend, and later told police the gun was "with a friend."

¶9　　　　The superior court found by a preponderance of the evidence father committed an act of domestic violence within the last year against mother. The superior court specifically held the instances mother testified to with respect to the gun and verbal abuse were enough to uphold the protective order and the Brady Notice. The superior court did not find sufficient evidence to uphold the protective order as to LM and removed LM as a protected person.

¶10　　　　Father timely appealed the order. He argues the superior court should not have: (1) granted an *ex parte* order of protection; (2) affirmed the order of protection at the contested hearing; and (3) granted the Brady Notice. This court has jurisdiction under the Arizona Rules of Protective Order Procedure 42(b)(2).

## ANALYSIS

¶11　　　　This court reviews the superior court's *ex parte* issuance of the protective order for an abuse of discretion. *See LaFaro v. Cahill*, 203 Ariz. 482, 485, ¶ 10 (App. 2002). The same standard of review applies to the superior court's continuance of a protective order following a contested hearing. *Cardoso v. Soldo*, 230 Ariz. 614, 619, ¶ 16 (App. 2012). This court defers to the superior court's determination of witness credibility and does not re-weigh testimonial evidence presented to the superior court. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

I.     The superior court did not abuse its discretion when it granted mother's motion for a protective order after the *ex parte* hearing.

**¶12**        To secure a protective order after an *ex parte* hearing, a petitioner must show a domestic relationship exists between the parties and establish reasonable cause to believe the defendant either may commit an act of domestic violence or has committed such an act within the last year. *See* A.R.S. §§ 13-3601(A), 13-3602(E). Because mother and father have a child in common, they have a domestic relationship.

**¶13**        Section 13-3601 defines domestic violence to include certain criminal acts and harassment. Harassment includes "communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses" and includes "caus[ing] another person to surveil a person for no legitimate purpose." *See* A.R.S. § 13-2921(1)-(4).

**¶14**        During the *ex parte* hearing, mother testified father had someone follow her and hired a private investigator to dig up her past phone calls to the police. The superior court correctly noted domestic violence is far broader than "hitting another person that which you're married to." Father's behavior falls squarely within the definition of harassment under A.R.S. § 13-2921(A)(4). Based on the petition and the evidence presented, the superior court did not abuse its discretion when it found Mother's testimony credible and granted her *ex parte* request for a protective order.

II.    The superior court did not abuse its discretion when it upheld mother's protective order after the contested hearing.

**¶15**        The superior court shall continue an order of protection if the petitioner demonstrates, by a ponderance of the evidence, reasonable cause to believe the defendant may commit an act of domestic violence or has committed an act of domestic violence within the last year. *Michaelson v. Garr*, 234 Ariz. 542, 544, ¶ 6 (App. 2014).

**¶16**        Father argues the superior court abused its discretion. Specifically, father argues mother's petition does not meet the threshold requirements under A.R.S. § 13-3602, and further says "absolutely no competent evidence [establishes] father committed or will commit an act of domestic violence against mother."

**¶17**        Instances of harassment, both verbal and through text message, are sufficient to uphold a protective order. *See Michaelson*, 234

Ariz. at 544-45, ¶¶ 6-7. *Michaelson* upheld an order of protection based on harassment stemming from an ex-fiancé sending the petitioner between 60-110 unwanted text messages. *Id*. *Michaelson* also considered text messages the ex-fiancé sent to Michaelson's eighteen-year-old daughter and a phone call he made to Michaelson's employer as evidence of harassment. *Id.* at 545, ¶ 8.

¶18　　　　Here, mother testified father sent her verbally abusive text messages at all hours of the day and night. Mother also said father sent text messages to her friends and family. At one point, father even contacted the father of one of her other children. Father's messages were not read into the record or otherwise preserved. In the absence of such record, this court will presume the evidence at trial was sufficient to uphold the protective order. *See id.* at 546, ¶ 13.

¶19　　　　Based on the petition and the evidence presented at the contested hearing, the superior court did not abuse its discretion when it found mother's testimony credible and upheld the protective order.

III.　　The superior court did not abuse its discretion when it found a Positive Brady Indicator for father.

¶20　　　　In addition to issuing a protective order, the superior court issued an order prohibiting father from possessing or purchasing a firearm for the duration of the order of protection under the Brady Act.[1] The superior court will issue such an order, if it determines the defendant is a credible threat to the physical safety of the plaintiff. *See* A.R.S. § 13-3602(G)(4). A Brady Notice prohibits the defendant from possessing or purchasing a firearm for the duration of the order.

¶21　　　　Here, the superior court held father posed a credible threat to mother's physical safety because of the incident involving the firearm when she testified father said "don't test me" while he removed the gun from the home.

¶22　　　　Father relies on *Mahar v. Acuna* to show an abuse of discretion. *See* 230 Ariz. 530 (App. 2012). In *Mahar*, an ex-wife obtained a protective order and the issuance of a Brady Notice from the superior court against

[1]The "Brady Act" refers generally to the federal Brady Handgun Violence Prevention Act, Pub.L. No. 103–59, 107 Stat. 1536 (1993).

her ex-husband. *Id.* at 531, ¶ 1. *Mahar* reversed the superior court on the Brady Notice in part because the parties made no reference to firearms during the superior court hearing. *Id.* at 533, ¶ 8. Further, *Mahar's* record was devoid of any evidence ex-husband threatened or used force against ex-wife. *Id.* at 535, ¶ 17.

**¶23** In contrast to *Mahar*, at the contested hearing here, father and mother argued extensively about the significance of father's comment as his gun was lying on the bed. Mother testified father told her "don't test me" when she asked him why he had the gun out on the bed. The superior court found father's actions involving the firearm were a threat against mother.

**¶24** The superior court did not abuse its discretion when it issued a Brady Notice against father because this incident and father's verbal abuse established father was a credible threat to mother's safety.

## CONCLUSION

**¶25** For the foregoing reasons, this court affirms the superior court's protective order and issuance of a Brady Notice.



AMY M. WOOD • Clerk of the Court
FILED: AA