IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

DENNIS RABER,
*Petitioner/Appellee,*

*v.*

KARYL LYNNE WAGNER, FKA
KARYL LYNNE RABER,
*Respondent/Appellant.*

No. 2 CA-CV 2024-0301
Filed May 8, 2025

---

Appeal from the Superior Court in Maricopa County
No. FC2024070932
The Honorable Casey Newcomb, Judge Pro Tempore

**VACATED AND REMANDED**

---

COUNSEL

Dennis R. Raber, Happy Jack
*In Propria Persona*

Law Offices of Kimberly A. Eckert, Tempe
By Kimberly A. Eckert
*Counsel for Respondent/Appellant*

## OPINION

Presiding Judge Eckerstrom authored the opinion of the Court, in which Judge Vásquez and Judge Sklar concurred.

E C K E R S T R O M, Presiding Judge:

¶1 Karyl Wagner appeals from the trial court's order affirming an order of protection obtained against her by Dennis Raber. We vacate the order's firearm restriction and remand the case for the court to modify the order consistent with this opinion.

**Factual and Procedural Background**

¶2 We view the facts in the light most favorable to upholding the trial court's ruling. *Michaelson v. Garr*, 234 Ariz. 542, n.1 (App. 2014). The parties were previously married and share a child who was a minor at the time of the events underlying this appeal. In July 2024, Raber filed a petition seeking an order of protection against Wagner. He alleged that starting in March 2024, Wagner had undertaken a "campaign to attack [his] reputation and [his] character as well as trying to get [him] fired at [his] work." He listed a series of instances in which Wagner had allegedly sent electronic messages to a range of individuals, including Raber's friends and his employer, accusing him of various acts of misconduct.

¶3 On July 9, 2024, the trial court entered an ex parte order of protection requiring that Wagner have no contact with Raber other than through a particular co-parenting messaging tool and prohibiting her from going to or near Raber's residence or workplace. It further found that Wagner "pose[d] a credible threat to the physical safety of" Raber and, pursuant to A.R.S. § 13-3602(G)(4), ordered that Wagner could not possess firearms and was required to surrender any firearms to designated locations within twenty-four hours of receiving service of the order.

¶4 Wagner requested a hearing to contest the order of protection. On July 26, the trial court held an evidentiary hearing at which both parties testified and two of Raber's proffered exhibits were admitted into evidence. At the conclusion of the hearing, the court orally pronounced that it would affirm the order of protection "with the modification that the workplace is a protected place only to Mr. Raber." It further clarified that this modification meant Wagner could "facilitate whatever contact" she needed

with Arizona Public Service (APS)—also her former employer—"as it relates to whatever benefits and retirement" funds she had, but that she should have "no contact with APS related to Mr. Raber at all, unless it has to do specifically with the benefit."

¶5        The same day, the trial court issued an order of protection in which it checked the box stating, "The protective order listed above [issued July 9, 2024] remains in effect." On the new order, the court did not check the box indicating an intent to modify the July 9 order.

¶6        In a minute entry issued after the evidentiary hearing, the trial court found by a preponderance of the evidence that Wagner "may commit an act of domestic violence or has committed an act of domestic violence within the last year," that good cause existed to affirm the July 9 order of protection, and that the original order would "remain in full force and effect." The minute entry also ordered that Wagner "may have contact with Arizona Public Service (APS) only as it relates to former employment and/or retirement benefits" and that none of her "communication with APS shall reference" Raber.

¶7        This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(5)(b).[1] *See also* Ariz. R. Protective Order P. 42(a)(2) (orders of protection affirmed or modified "after a hearing at which both parties had an opportunity to appear" appealable).

## Discussion

¶8        Wagner contends the evidence presented at the evidentiary hearing was insufficient to support the trial court's affirmance of the order of protection. In particular, she challenges the order's provisions revoking her right to possess firearms and restricting her from contacting or visiting APS. Underlying these arguments is Wagner's contention that the order affirming the order of protection is inconsistent with the court's oral pronouncements during the evidentiary hearing.

¶9        We review injunctions, including those affirming orders of protection, for an abuse of discretion. *See Mahar v. Acuna*, 230 Ariz. 530,

---

[1]*See also Moreno v. Beltran*, 250 Ariz. 379, ¶ 11 (App. 2020) (orders of protection appealable under § 12-2101(A)(5)(b) "without regard to whether it involves a firearms prohibition" and without certification of finality under Ariz. R. Fam. Law P. 78).

¶ 14 (App. 2012). We will affirm unless the record "is devoid of competent evidence to support the decision." *Id.* (quoting *Hurd v. Hurd*, 223 Ariz. 48, ¶ 19 (App. 2009)).

**¶10** After a contested hearing, "[f]or a protective order to remain in effect as originally issued or as modified at a hearing, the plaintiff must prove the case by a preponderance of the evidence." Ariz. R. Protective Order P. 38(g)(3). At the conclusion of such hearing, the court must "state the basis for continuing, modifying, or revoking the protective order." Ariz. R. Protective Order P. 38(g)(4).

## I.  Sufficiency of Evidence to Support Protective Order

**¶11** Wagner first argues the evidence presented at the hearing was insufficient to support the trial court's finding that she had engaged in harassing behavior. Orders of protection "may be granted to prevent a person from engaging in acts of domestic violence" and are generally governed by § 13-3602. Ariz. R. Protective Order P. 4(a). Acts of domestic violence include, as relevant here, harassment and use of electronic communications to harass. *See* A.R.S. §§ 13-2916(A)(3), 13-2921(A)(1), 13-3601(A)(1), (2). A person commits harassment if she "knowingly and repeatedly commits an act or acts that harass another person" or if, "in a manner that harasses," she knowingly "[c]ontacts or causes a communication with another person by . . . electronic . . . means." § 13-2921(A)(1). Harassment by use of an electronic communication also occurs when a person "disturb[s] by repeated . . . unwanted or unsolicited electronic communications the peace, quiet or right of privacy of the person at the place where the communications were received." § 13-2916(A)(3).

**¶12** At the hearing, Raber presented both testimonial and documentary evidence that Wagner had repeatedly sent texts and emails to his relatives, work colleagues, and other contacts. Several of those exhorted the recipients to communicate with or engage directly with Raber on Wagner's behalf. For example, Raber testified that in April of 2024, Wagner had contacted a family friend and stated that "she was going to call the cops" on Raber if he did not contact Wagner by that evening. He also presented evidence that, in March and June of 2024, Wagner had sent text messages to Raber's relatives requesting that they "check on him" and urging them to report what Raber had been saying about her. Wagner also sought to communicate with Raber through his workplace contacts. In June 2024, she sent an email suggesting Raber's colleagues "knock some sense into" him, requesting that Raber's former boss serve as a mediator in the parties' dispute regarding issues involving their minor child, and generally

suggesting that Raber's colleagues should "speak to" him about his parenting decisions. Raber testified that these communications had "invad[ed] [his] privacy" and that he wished to "[l]ive [his] life in peace and move on." Together, this evidence supports the trial court's finding that Wagner had harassed Raber by disturbing his peace and privacy through repeated, unwanted electronic communications. *See* §§ 13-3601(A)(1), (2), 13-2916(A)(3), 13-2921(A)(1).[2]

¶13 In so holding, we take no issue with our previous decisions that have vacated protective orders on the ground that a defendant's communications were directed toward third parties rather than directly at the victims. *See, e.g.*, *LaFaro v. Cahill*, 203 Ariz. 482, ¶¶ 2, 11-13, 24 (App. 2002) (analyzing A.R.S. § 12-1809); *Wineberg v. Buonsante*, No. 2 CA-CV 2024-0090, ¶¶ 1, 6-9, 11, 17-21 (Ariz. App. Oct. 15, 2024) (mem. decision) (analyzing § 13-2921(E)). Although those cases each found specific communications with third parties insufficient to support a charge of harassment, neither held that such communications could never constitute harassment. *See LaFaro*, 203 Ariz. 482, n.3 ("Our conclusion is based on the facts of this case. We are not suggesting that a third-party conversation could never constitute 'directed at' harassment pursuant to A.R.S. § 12-1809."). Notably, § 13-2921 expressly contemplates that harassment can occur through communications to third parties when that communication, as here, is designed to trigger actions directed at the victim. *See* § 13-2921(A)(4) (harassment when person makes false report to "law enforcement, credit or social service agency" against another), (A)(5) (harassment to interfere with delivery of utility to another person). Here, the record supports a determination that Wagner, through her communications with third parties including Raber's relatives and work colleagues, sought to initiate direct actions toward, and communications with, Raber. *See* § 13-2921(A)(1). Finally, the email to APS disturbed Raber's "peace, quiet or right of privacy" at his workplace, a "place where the communications were received." § 13-2916(A)(3).

## II. Firearms Restriction

¶14 Upon entering an order of protection, a court may "prohibit the defendant from possessing or purchasing a firearm for the duration of the order." § 13-3602(G)(4). However, such prohibition is contingent on

---

[2]Although Wagner complains that "the record is not clear as to what the trial court actually considered," we conclude the court's finding was amply supported by the admitted evidence alone.

the court finding "that the defendant is a credible threat to the physical safety of the plaintiff" or other individuals designated by the protective order. *Id.* Any court "orders concerning firearms should be based on a court's assessment of credible threats of physical harm by the specific person whose rights would be affected by the order." *Mahar*, 230 Ariz. 530, ¶ 20. Additionally, to grant such an order, the court "must ask the plaintiff about the defendant's use of or access to firearms to determine whether the defendant poses a credible threat to the physical safety of" people protected by the order. Ariz. R. Protective Order P. 23(i)(1).

¶15 The record contains no evidence to support the trial court's firearms prohibition. *See Mahar*, 230 Ariz. 530, ¶ 14. Nothing in the transcript suggests that Raber alleged, or that the court found, that Wagner posed any threat to Raber's physical safety. Instead, Raber's testimony was limited to allegations that Wagner had invaded his privacy, attacked his character by accusing him of being a bad person and a bad father, and generally attempted to ruin his reputation at his workplace and prevent him from being happy in his life. He ended his testimony with the comment that he wanted to "be left alone" and "to live [his] life in peace and move on." Although, as we address above, this evidence supports the court's finding that Wagner had engaged in harassment, it does not support a finding that Wagner was a threat to Raber's physical safety. Further, the record does not reflect that the court made any inquiry as to Wagner's possession or use of weapons or firearms. *See* Ariz. R. Protective Order P. 23(i)(1). Therefore, the court abused its discretion in affirming the original July 9 protective order's prohibition against Wagner's possession of firearms.[3]

### III. Contact with APS

¶16 Wagner also argues the July 26 order of protection is inconsistent with the trial court's oral pronouncements and its minute entry issued after the evidentiary hearing, potentially resulting in an overly broad restriction of her free speech rights. We agree that these rulings conflict to some extent with regard to Wagner's communications with APS. In particular, the original July 9 order of protection directed Wagner to "not go to or near" APS, Raber's place of employment. In its oral pronouncement at the conclusion of the hearing, the court stated on the

---

[3]Notwithstanding our reasoning vacating the state firearms prohibition, we note that Wagner may still be subject to federal firearms restrictions. *See, e.g.*, 18 U.S.C. § 922(g)(8).

record that it intended to "affirm the order of protection with the modification that the workplace is a protected place only to Mr. Raber." As noted above, the court's minute entry similarly clarified that Wagner could contact APS only in relation to her own prior employment or retirement benefits and that she could not reference Raber in any such communication. However, in the July 26 order of protection, the court did not check the box to indicate that it intended to modify the original order of protection.

¶17        Thus, the July 26 order of protection conflicts with the trial court's oral pronouncement and its minute entry because that order does not indicate that it modifies the July 9 order by narrowing the scope of prohibited communications between Wagner and APS. Considering this record, we conclude the oral pronouncement and minute entry together indicate the court intended to modify the order of protection, and the July 26 order should have so indicated. *Compare State v. Ovante*, 231 Ariz. 180, ¶ 38 (2013) (when oral pronouncement of sentence conflicts with written minute entry, oral pronouncement controls), *with Flynn v. Cornoyer-Hedrick Architects & Planners, Inc.*, 160 Ariz. 187, 193 (App. 1988) ("Where there is a conflict between a minute entry and the judgment, the terms of the judgment will control."). Therefore, to effect clarity for the parties and consistency with the record, on remand the court's order of protection shall reflect that it modifies the July 9 order.[4]

¶18        Further, to the extent the trial court's order may be interpreted as restricting Wagner from communicating with any APS employee about any matter other than her own employment benefits, such interpretation constitutes an unconstitutionally broad restriction on Wagner's free speech rights. Although harassing speech is not a form of constitutionally protected communication, *see State v. Brown*, 207 Ariz. 231, ¶ 8 (App. 2004), the court's order appears to restrict more communications than authorized by statute. *See* § 13-3602(G) (listing remedies that may be included in order

---

[4]We disagree with Wagner's contention that the trial court's narrow language proscribing her from contacting APS about Raber overbroadly prohibits her "from contacting a friend [who works at APS] for lunch" or from otherwise socializing with APS employees outside the boundaries of the workplace. As the court clearly articulated at the evidentiary hearing, and as Wagner apparently understood at that time, the order prohibits Wagner from communicating about Raber with APS employees in their professional capacities, not from continuing her unrelated personal contacts with those employees.

of protection).  On remand, the order of protection should be narrowly tailored to preclude only communications with APS employees that are substantively directed at Raber and that fall within the purview of our harassment statutes.  *See* §§ 13-2916(E)(3), 13-2921(E).

## IV. Costs and Attorney Fees

**¶19**        Wagner requests her costs and attorney fees on appeal. Because she has partially prevailed on appeal, Wagner is entitled to her costs, subject to her compliance with Rule 21(b), Ariz. R. Civ. App. P.  *See* A.R.S. § 12-341.  However, because Wagner cites no authority to support an award of attorney fees other than Rule 21, we deny that request.  *See Zambrano v. M & RC II LLC*, 254 Ariz. 53, ¶ 49 (2022); *see also* Ariz. R. Civ. App. P. 21(a)(2).

## Disposition

**¶20**        For the foregoing reasons, we vacate the order as to the firearms provision.  We remand to the trial court so it may enter a new order consistent with this opinion.