**UNITED STATES of America**

v.

**Terrance Wesley MILES**

No. CRIM.02–27–P–C.

United States District Court,
D. Maine.

Dec. 2, 2002.

Nancy Torresen, Esq., U.S. Attorney's Office, Bangor, ME, for U.S.

Robert C. Andrews, Esq., Portland, ME, for Terrance Wesley Miles.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

Now before the Court is Defendant's Motion to Dismiss the Indictment (Docket Item No. 11) charging him with two counts of making a false statement in connection with his attempts to purchase firearms, in violation of 18 U.S.C. § 922(a)(6). In his Motion to Dismiss, Defendant argues that 18 U.S.C. 922(g)(8), the provision that puts his acts within the purview of section 922(a)(6), is unconstitutional facially and as applied to him. For the reasons discussed below, the Court finds that Defendant's motion should be **DENIED**.

### I. Facts

The following facts are undisputed. On March 8, 1999, Lisa Ann Miles, the wife of Defendant Terrance Wesley Miles, filed an application for a protective order in the District Court in Milam County, Texas, on the grounds that Defendant had committed family violence. *See* Stipulations, Exhibit A (Docket Item No. 12). A hearing for this protective order was set for March 19, 1999, at 9:00 a.m. On March 16, 1999, Defendant was served in hand at his apartment in Lewiston, Maine, with notice of

the hearing and of the application for the protective order. *See* Stipulations ¶ 6; *see also* Stipulations, Exhibits D & E. Defendant did not respond in any way to the notice of hearing and application for protective order, and he did not attend the hearing on March 19, 1999. At the hearing, Defendant was adjudged to have wholly made default, and the judge issued a Protective Order against him that day. *See* Stipulations, Exhibit G. In the Protective Order, the judge made a *finding* that family violence had occurred and was likely to occur again in the future, and he prohibited Defendant from committing family violence as defined by section 71.004 of the Texas Family Code.[1] *Id.* at 2. The Protective Order further mandated that Defendant be prohibited from communicating directly with his wife and children "in a threatening or harassing manner" or engaging in any conduct directed specifically toward these family members, including following them, that was "reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass" his wife and children. *Id* at 2–3. The Protective Order was to continue in full force and effect until March 19, 2000. *Id.* at 5. That same day, the Protective Order was mailed to Defendant at his Lewiston, Maine address, and Defendant received it. *See* Stipulation ¶ 9.

On October 22, 1999, Defendant attempted to purchase a long gun from a K–Mart in Lewiston. As is required by all federally licensed firearms dealers, K–Mart had Defendant fill out the standard Bureau of Alcohol, Tobacco, and Firearms (ATF) Form 4473 before allowing him to complete his purchase. The ATF form requests information from the potential purchaser in an effort to ascertain whether or not that individual is prohibited under federal law from acquiring firearms. Question 9(j) asks the purchaser: "Are you subject to a court order restraining you from harassing, stalking, or threatening an intimate partner or child of such partner?". Defendant answered "no" to this question. *See* Stipulations, Exhibit I. When K–Mart ran a criminal background check on Defendant through the National Instant Criminal Background Check System (NICS) as required under federal law, the initial response was "delayed," meaning that the firearms dealer must delay the transaction until three business days have elapsed or he is contacted further by NICS. On October 25, 1999, NICS came back with a "denied" response and K–Mart did not proceed with the sale. *See* Stipulations, Exhibits I & J.

On February 2, 2000, Defendant once again attempted to purchase a firearm, this time a Remington 742 30/06 rifle from a pawn shop in Lewiston. Again, upon completing the ATF form, Defendant answered "no" when asked if he was subject to any protective court orders. Just as before, upon running his information through the NICS, the sale to Defendant was ultimately denied. *See id.*

## II. Discussion

Defendant is charged with making a false statement in connection with his two attempts to purchase firearms, in violation

---

1. Section 71.004 of the Texas Family Code defines "family violence" as:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;

(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or household; or

(3) dating violence, as that term is defined by Section 71.0021.

Tex. Family Code Ann. § 71.004 (West 2002).

of 18 U.S.C. § 922(a)(6). Section 922(a)(6) holds that

> it shall be unlawful ... for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a ... licensed dealer ... to knowingly make any false or fictitious oral or written statement intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

One of the provisions of this chapter is section 922(g)(8). It is toward this provision that Defendant directs his unconstitutionality challenge, and upon this challenge that he bases his argument for dismissal of the Indictment.

Defendant asserts that the Second Amendment confers a fundamental right upon individuals to keep and bear arms and that strict scrutiny must be applied in evaluating section 922(g)(8)'s effect on this fundamental right. *See* Motion to Dismiss (Docket Item No. 11) at 8. Section 922(g)(8) provides that it shall be unlawful for any person who is subject to a court order that

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking or threatening an inti-

mate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

> (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; ...

to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Defendant argues that he falls under 922(g)(8)(C)(ii) as a prohibited person, and it is this particular provision that is unconstitutional, as a violation of the Equal Protection Clause and substantive and procedural due process.[2] The Court finds each of these arguments unavailing.

██ Defendant urges this Court to accept a recently articulated view of the Fifth Circuit that the Second Amendment confers an individual, as opposed to collective, fundamental right to bear arms. *See United States v. Emerson,* 270 F.3d 203 (5th Cir.2001).[3] Defendant argues that 18

---

2. Although Defendant purports to be asserting these three separate constitutional violations, many of his arguments overlap and run together with regard to each of these separate assertions, and therefore, the Court will address them as a whole. The Court notes that it is characterizing Defendant's arguments to the extent that it can understand and distinguish them. After careful and repeated review of Defendant's written submissions, the Court has set forth what it believes to be the thrust of his arguments.

3. The Court notes, however, that this view was put forth only in *dicta,* albeit 70 pages of *dicta.* In a special concurrence by Judge Parker, he pointed this out in no uncertain terms: "The determination whether the rights bestowed by the Second Amendment are collective or individual is entirely unnecessary to resolve this case and has no bearing on the judgment we dictate by this opinion." *Emerson,* 270 F.3d at 272 (Parker, J., concurring). Judge Parker called the analysis "interesting" and "scholarly," but nonetheless *dicta* that

U.S.C. § 922(g)(8) unconstitutionally infringes upon this right, and asks this Court to strike it down as facially unconstitutional and as applied to him. At the outset, the Court must note that to decide this Motion to Dismiss, it is not necessary to reach the issue of whether or not the Second Amendment confers an individual right to bear arms. "As federal judges it is our special charge to avoid constitutional questions when the outcome of the case does not turn on how we answer." *Emerson*, 270 F.3d at 272 (Parker, J., specially concurring) (*citing Spector Motor Service v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)). Therefore, in keeping with "the one doctrine more deeply rooted than any other in the process of constitutional adjudication ... that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable," *Spector*, 323 U.S. at 105, 65 S.Ct. 152, 89 L.Ed. 101, this Court will not discuss this broader, Second Amendment issue.

### A. Section 922(g)(8) is a reasonable restriction on the right to bear arms.

■ Regardless of whether there is such a fundamental individual right, the restriction imposed by section 922(g)(8) is a narrow and reasonable one, and it passes constitutional muster even under a strict scrutiny test. The *Emerson* court, while

finding the Second Amendment to protect an individual's right to bear arms, also found that the restriction at issue in section 922(g)(8) did not unconstitutionally infringe upon this right. The fundamental nature of the right "does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases...." *Emerson*, 270 F.3d at 261. The court noted that the Supreme Court in *Robertson v. Baldwin*, 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715 (1897), remarked that "the right to keep and bear arms is, like other rights protected by the Bill of Rights, 'subject to certain well-recognized exceptions, arising from the necessities of the case' and hence 'is not infringed by laws prohibiting the carrying of concealed weapons,' " *Id.* at 261, n. 62, 17 S.Ct. 326 (*quoting Robertson*, 165 U.S. at 281–82, 17 S.Ct. 326, 41 L.Ed. 715).[4]

Defendant specifically takes issue with the language of section 922(g)(8)(C)(ii) which places those who are subject to a court order that "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force" against a family member "that would reasonably be expected to cause bodily injury," into the category of those prohibited from possessing guns. Defendant contends that this provision results in a "blanket prohibition on firearm possession irrespective of the

"amount[s] to at best an advisory treatise on this long-running debate." *Id.*

4. The *Robertson* court gave examples of other restrictions on the amendments within the Bill of Rights: the First Amendment's freedom of speech and press forbade the publication of "libels, blasphemous or indecent articles, or other publications injurious to public morals or private reputation;" the Fifth Amendment's protection from double jeopardy "does not prevent a second trial, if upon the first trial the jury failed to agree, or if the verdict was set aside upon the defendant's

motion;" the Sixth Amendment's provision that an accused person shall be confronted with the witnesses against him does not "prevent the admission of dying declarations, or the depositions of witnesses who have died since the former trial." *Robertson*, 165 U.S. at 281–82, 17 S.Ct. 326, 41 L.Ed. 715. The Court remarked that "[i]n incorporating these principles [in the Bill of Rights] into the fundamental law, there was no intention of disregarding the exceptions, which continued to be recognized as if they had been formally expressed." *Id.* at 281, 17 S.Ct. 326.

individual's propensity for actual violence or need to restrict any other legitimate uses of a firearm." Motion to Dismiss at 9. He argues that to become a prohibited person under this provision, a protective order need only contain "operative language that tracks the standard in the federal statute." *Id.* Defendant argues that he himself was "deprived of his constitutional right because the judge had authority to issue a protective order that tracked the language of 18 U.S.C. § 922(g)(8) and not because his conduct had been shown to cause bodily harm or that he was likely to commit an act of violence in the future." *Id.* at 11. He further argues that "it is not really possible to argue that there was a finding of credible threat to the physical safety of Ms. Miles." Defendant's Response to the Government's Objection to Defendant's Motion to Dismiss (Docket Item No. 17) at 6.

As the Fifth Circuit noted in *Emerson,* when Congress created section 922(g)(8)(C)(ii)'s requirement that the order explicitly prohibit the attempted, threatened, or actual use of physical force that would reasonably be expected to cause bodily injury,

> it was legislating against the background of the almost universal rule of American law that for a temporary injunction to issue: "There must be a likelihood that irreparable harm will occur. Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant. Thus, a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the injury need not have been inflicted when application is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis."

*Emerson,* 270 F.3d at 262 (*quoting* 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2948.1 at 153–56). Following these standards, a court will not issue a protective order if there is no basis to do so. It will only do so after making explicit findings with respect to the defendant and the likelihood of injury that such defendant poses. Restricting the firearm access of those who are then deemed to necessitate such protective orders is certainly reasonable. Defendant's argument for the unconstitutionality of (C)(ii) fails.

■ As applied to Defendant, his argument also fails for the simple reason that in his case, the court did make a specific finding of violence in issuing the protective order. The order said:

> The Court finds that family violence has occurred and that family violence is likely to occur again in the future. The Court finds that the ... protective orders are for the safety and welfare and in the best interest of Applicant and other members of the family and are necessary for the prevention of family violence.

Stipulations, Exhibit G at 2. With this finding, Defendant actually falls under *both* section 922(g)(8)(C)(i) and (c)(ii) as a prohibited person. Section 922(g)(8)(C)(i) prohibits gun possession by those who are "subject to a court order that ... includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child." The words used in the protective order leave no room for argument about whether the Texas judge found Defendant to pose a credible threat to the safety of his wife, as Defendant claims. There is no question that the judge did make such a finding, and the Court finds Defendant's argument that the order simply "tracked the language of the statute" without any finding

of credible threat to the physical safety of his wife to be baseless.

### B. Section 922(g)(8) is narrowly tailored to support a compelling government interest.

■ The Court finds to be wholly without merit Defendant's contention that "the truly necessary relationship does not exist between preventing physical harm against family members by firearms and the language of 18 U.S.C. 922(g)(8)(C)(ii)." Defendant's Response to Government's Objection at 7. In 1994 Congress enacted the Violence Against Women Act ("VAWA") as part of the Violent Crime Control Law and Enforcement Act of 1994, Pub.L. No. 103–322 § 110401(c), 108 Stat. 1796. Section 922(g)(8) was a provision within VAWA that was originally known as the Domestic Violence Firearm Prevention Act. The House Report on the Domestic Violence Firearm Prevention Act made several legislative findings:

> (1) domestic violence is the leading cause of injury to women in the United States between the ages of 15 and 44; (2) firearms are used by the abuser in 7 percent of domestic violence incidents ... and (3) individuals with a history of domestic abuse should not have easy access to firearms.

H.R.Rep. No. 103–395 (1993). These determinations of legislative fact that individuals who have been found to present a threat of violence to their family members should not be allowed to own guns, and the choice of words that Congress chose to implement this legislative determination, easily survive strict scrutiny. As discussed above, section 922(g)(8) ensures that only those individuals who have been determined by a court to pose such a threat of violence are subject to its prohibitions. This provision is narrowly tailored to support the compelling government interest of preventing family violence.

### C. Section 922(g)(8) meets the constitutional requirements for the "knowing" standard, and Defendant possessed the requisite knowledge to meet this standard.

■ Next, Defendant makes much of his lack of "knowledge of the attendant circumstances." Defendant's Response to the Government's Objection at 2. He argues that "[t]he knowing standard requires knowledge of the attendant circumstances that make you a prohibited person not just that the statement turned out to be false." Id. The Court understands Defendant to be arguing that just because he knew there was a protective order against him, this was not enough to give him knowledge that he could not purchase a firearm. Once again, Defendant's argument fails.

As the Emerson court stated in its discussion of why section 922(g)(8) did not violate the Due Process Clause of the Fifth Amendment, "[k]nowingly—in contrast to at least some uses of 'willfully'—does not require that the defendant know that his actions are unlawful, but only that he know he is engaging in the activity that the legislature has proscribed." Emerson, 270 F.3d at 216 (citing Bryan v. United States, 524 U.S. 184, 118 S.Ct. 1939, 1945–47, 141 L.Ed.2d 197 (1998)). The Emerson court points to Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), as exemplifying this distinction: "In Staples, the Supreme Court held that conviction for unlawful possession of a machine gun did not require knowledge that machine gun possession was unlawful, but only knowledge that the weapon possessed was a machine gun." Id. (citing Bryan, 118 S.Ct. at 1946).

■ These decisions are directly applicable to Defendant's situation, and they easily lay to rest his arguments. Defendant knew that he was subject to a court

protective order when he filled out the ATF form upon attempting to purchase a gun; when questioned by an ATF agent, Defendant admitted that he received the Protective Order. *See* Stipulations ¶ 9. According to *Staples,* all that is required is that Defendant have knowledge that he was attempting to purchase a gun, not that such a purchase would be illegal. Defendant has met this standard. In fact, Defendant's knowledge goes well beyond even the constitutional minimum. Unlike the defendant in *Staples,* Defendant had direct notice, *at the time he attempted to purchase a gun,* that his right to possess a gun was curtailed as a result of the protective order. Immediately after the form asks whether the potential purchaser is subject to any protective court orders restraining him from harassing, stalking, or threatening an intimate partner or child of such partner, it specifically directs him to "Important Notice 6 and Definition 4." *See* Stipulations, Exhibit I. Important Notice 6 advises potential firearms purchasers of 18 U.S.C. § 922 and specifically sets out the provisions prohibiting those who are subject to a court protective order from purchasing a firearm. *See* Stipulations, Exhibit J. Definition 4 then defines "intimate partner," a definition which includes one's spouse. *See id.* Not only can Defendant not credibly claim that he did not have knowledge that he was subject to a protective court order, or that he was attempting to purchase a gun, but he cannot now claim that he did not know that such a purchase was illegal in his case. Defendant twice answered Question 9(j), which inquired about protective court orders that the purchaser might then be under, in the negative and with that knowledge.

### D. Defendant received adequate notice of the restriction on his right to bear arms.

■ Lastly, Defendant asserts that he was not given notice that his Second Amendment rights would be curtailed as a result of a protective order being entered against him and that, as a result of this, he was not given an adequate opportunity to be heard. *See* Motion to Dismiss at 12 and Defendant's Response to the Government's Objection at 4. Defendant analogizes his situation to that of the individuals in the case of *Doe v. Rowe,* 156 F.Supp.2d 35 (D.Me.2001). In *Doe,* the court found to be unconstitutional the fact that mentally ill patients in guardianship proceedings were not advised in those proceedings that their right to vote could be extinguished. *Id.* at 49–50. The court found that this lack of notice led to an inadequate opportunity to be heard and that, therefore, these individuals faced a high risk of being deprived of their fundamental right to vote without due process. *Id.* at 48.

However, the Court of Appeals for the First Circuit has previously decided that 922(g)(8) provides constitutionally sound notice, and that the fact that "state court restraining orders [do not] inform those whom they enjoin of the federal law consequences that may attach" to such orders is not fatal. *United States v. Meade,* 175 F.3d 215, 225 (1st Cir.1999). The court in *Meade* explicitly found that 922(g)(8) "satisfies the standards embedded in precedent; both the proscribed conduct and affected class of persons are explicitly set forth." The court rejected the notion that a defendant under a court protective order could not be expected to know that his mere possession of a gun would violate the law. Unlike the defendant in *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), whom the Court found could not be expected to know that his mere *presence* in a municipality was a federal law violation, the defendant who is subject to a judicial protective order presents a different situation:

[P]ossession of firearms by persons laboring under the yoke of anti-harassment or anti-stalking restraining orders is a horse of a different hue. The dangerous propensities of persons with a history of domestic abuse are no secret, and the possibility of tragic encounters has been too often realized. We think it follows that a person who is subject to such an order would not be sanguine about the legal consequences of possessing a firearm, let alone of being apprehended with a handgun in the immediate vicinity of his spouse.

*Id.* at 226, 78 S.Ct. 240.

Moreover, as discussed above, it remains a fact that Defendant knew that he was subject to a court protective order when he filled out the ATF form upon attempting to purchase a gun; it is also a fact that he was provided notice by the ATF form when he attempted to make this purchase that so long as he was under such an order, federal law prohibited him from possessing a gun. Nevertheless, in spite of the clear warning on this form about the applicable restrictions on purchasing firearms, Miles answered "no" to Section 9(j)'s question and continued his attempt to acquire a gun.[5] The express notice on the ATF form filled out by Defendant, in light of the First Circuit holding in *Meade*, dispatches Defendant's argument that he was denied due process in this instance.

### III. Conclusion

For the foregoing reasons, Defendant has failed to show any violations of his constitutional rights; the Court hereby

**DENIES** the Defendant's Motion to Dismiss the Indictment.

So ORDERED.

---

5. It is noteworthy that even after being denied a gun once, Defendant later made a second attempt to purchase a gun, in spite of his knowledge that he was subject to a court restraining order. Defendant's contention that he was never advised as to why his first attempted purchase was denied, *see* Defendant's Response to the Government's Objection at 3, can hardly be sustained given his admitted receipt of the protective order in the first place, and the subsequent explicit warnings on the form he filled out on both occasions that he attempted to make his firearms purchase.