NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of

MICHELLE CRANE, *Petitioner/Appellee,*

*v.*

PAUL M CRANE, *Respondent/Appellant.*

No. 1 CA-CV 22-0777 FC
FILED 2-1-2024

Appeal from the Superior Court in Maricopa County
No. FN2022-051976
The Honorable John R. Doody, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Michelle Crane, Scottsdale
*Petitioner/Appellee*

High Desert Family Law Group, LLP, Phoenix
By Craig P. Cherney
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

---

**M c M U R D I E**, Judge:

**¶1**        Paul M. Crane ("Husband") appeals from the superior court's amended protective order against him. We affirm the protective order and the notice of Brady[1] indicator.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Husband and Michelle Crane ("Wife") are married and have two adult children. The parties lived together until the court issued the subject protective order.

**¶3**        In October 2022, Wife petitioned for an order of protection against Husband. *See* A.R.S. § 13-3602(A). Wife asserted that within the past year, Husband "constantly harassed" her, filmed her, slapped her cell phone out of her hand, tracked her vehicle, and threw a hard drive at her. Wife also claimed in her petition that Husband had shot his gun in the house two times during arguments "over the years[,]" and in November or December 2021, she "heard him racking his gun" and thought he was intimidating her. Wife stated, "I am afraid [Husband] will use his gun and hurt me or my daughter."

**¶4**        The court entered a protective order. The order warned Husband that "it may be unlawful for [him] to possess or purchase a firearm . . . under 18 U.S.C. § 922(g)(8)" and instructed Husband to consult with an attorney to answer questions. Husband requested a hearing to contest the order. The hearing form Husband submitted to the court warned Husband, "Under federal law, certain conditions can cause you to

---

[1]        "Brady" refers to the federal Brady Handgun Violence Prevention Act, H.R. 1025, 103rd Cong. (1993). The Violent Crime Control and Law Enforcement Act of 1994 added paragraph (8) to 18 U.S.C. § 922(g), which controls this decision. *See* H.R. 3355, 103rd Cong. § 110401 (1994).

be prohibited from possessing firearms while an Order of Protection is in effect." The hearing form listed the conditions.

¶5          The court held a hearing, and both Husband and Wife appeared and testified. Counsel represented Husband. Wife detailed the incidents she alleged in her petition. For example, she explained that she and Husband had a heated conversation about a hard drive, and Husband "chucked it down the hall at [her], just barely missing [her]." Husband acknowledged the hard drive incident but claimed he "underhand tossed [the hard drive] to her."

¶6          Husband's attorney cross-examined Wife and asked her whether Husband had ever struck her with his body. Wife revealed that within the last year, Husband had pushed her. Wife conceded she did not feel she was in danger during the incident.

¶7          Husband offered videos of his interactions with Wife. Husband's attorney asserted that some video footage showed Wife "wielding something in her hand." Although the superior court viewed the footage, the video evidence was not admitted, and we have no record of it on appeal.

¶8          Husband uses a wheelchair as he is paralyzed in his lower body. He testified about his firearm use and stated he almost always kept his gun in his wheelchair. Husband explained that, about once per week, he removed the magazine from his gun to clean it. The court asked Husband about his gun, and Husband confirmed he carried his gun in the house in his wheelchair. Wife testified that Husband was "always cocking his gun, like every night[,]" and he cleaned his gun in front of her to intimidate her. Husband denied cleaning his gun in front of Wife.

¶9          Once the matter was submitted, the court said, "Let me just think about it for a second. . . . I will find that [Wife] has not met her burden, and I'm going to dismiss the order of protection." The court continued to describe the parties' relationship, calling it a "selfish, toxic environment," and noted that Wife was crying in the courtroom. The court commented on the video footage, observing that Wife appeared "pretty strong in that video when [she was] holding that hammer," and she "stood up to [Husband] pretty well."

¶10          The court reiterated that it felt Wife had not met her burden, but it was "trying to look at all of these events in the scheme of things and to see whether there is something." After reviewing all the evidence, the court found there was "evidence that [Husband] did commit at least two

acts of domestic violence" when Husband pushed Wife and when he threw the hard drive at Wife. The pushing incident was "domestic violence, even if it didn't hurt [Wife]," and even if she did not feel frightened. After the court conveyed it would affirm and continue the protective order, Husband stated he wanted to testify again and offer more video evidence, but the court refused to reopen the evidence. The court said its decision was "not up for debate," as it had heard from both Husband and Wife.

¶11 The court found there was reasonable cause to believe that Husband committed domestic violence within the last year. Thus, the court ordered that Husband "shall not commit any crimes, including but not limited to harassment, stalking, or conduct involving the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury, against [Wife]." The court prohibited Husband from having physical contact with Wife, granted Wife exclusive use of their residence, and prohibited Husband from going near the residence.

¶12 The court expressly declined to restrict Husband's firearm use under Arizona law. *See* A.R.S. § 13-3602(G)(4). But by issuing a notice of Brady indicator, the court notified Husband that under federal law, Husband was "disqualified from purchasing or possessing a firearm or ammunition for the duration of the Order of Protection." Husband accepted service of the amended protective order, and the court entered the order with the notice of Brady indicator.

¶13 Husband appealed, and we have jurisdiction under Arizona Rule of Protective Order Procedure 42(a)(2), A.R.S. § 12-2101(A)(1), (5)(b), and A.R.S. § 12-120.21(A)(1). *See Mahar v. Acuna*, 230 Ariz. 530, 533-34 ¶¶ 11-12 (App. 2012).

## DISCUSSION

¶14 "We review an order of protection for an abuse of discretion." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10 (App. 2014). The superior court abuses its discretion by making an error of law or issuing a decision unsupported by the record. *Mahar*, 230 Ariz. at 534, ¶ 14. We review interpretations of Arizona and federal law *de novo*. *Id.*

**A.    The Superior Court Did Not Violate Husband's Due Process Rights by Affirming and Continuing the Protective Order.**

¶15 Due process protections apply to protective order proceedings. *See Savord*, 235 Ariz. at 259-60, ¶ 16. "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v.*

*Kelly*, 397 U.S. 254, 267 (1970) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). In a contested protective order hearing where both parties appear, "[t]he judicial officer must ensure that both parties have an opportunity to be heard, to present evidence, and to call and examine and cross-examine witnesses." Ariz. R. Prot. Ord. P. 38(g)(1).

¶16            Husband claims the "[c]ourt initially quashed Wife's [order of protection]" but "unilaterally reversed its prior decision and sustained the [order] after Wife "sob[bed] at her chair." Thus, Husband argues the court violated his due process rights by "wrongfully accept[ing] additional evidence from Wife" of her sobbing, and then rejecting Husband's requests to present more evidence and reversing its ruling.

¶17            The record does not support Husband's claims. First, an issue or claim is not final until the court enters an appealable order. *See Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266, ¶ 10 (2022) (A court decision must be a final judgment on the merits before issue or claim preclusion applies.). Here, the court never quashed the order of protection and did not reverse a prior decision. While deliberating, the court stated that "[it felt] that [Wife had] not met [her] burden" of proof and that it was "going to dismiss the order of protection." But after the court continued considering the evidence, it changed its position when it found that Husband committed domestic violence. Husband cannot claim that the court's first statement constituted a final resolution of the dispute because it had not yet entered an appealable order. *See Props. Inv. Enters., Ltd. v. Found. for Airborne Relief, Inc.*, 115 Ariz. 52, 54 (App. 1977) (quoting *Decker v. City of Tucson*, 4 Ariz. App. 270, 272 (1966)) ("A final judgment or decree decides and disposes of the cause on its merits, leaving no question open for judicial determination."); *Camasura v. Camasura*, 238 Ariz. 179, 182, ¶ 9 (App. 2015) (An order is final and appealable "if no decision of the court could change and the only remaining task is merely ministerial.").

¶18            Second, the court did not reopen evidence by observing that Wife was crying in the courtroom. The court mentioned that Wife was crying as it described the parties' relationship as "selfish" and "toxic." But the matter was submitted, and the court did not accept more evidence from either party.

¶19            Nor did the court cite Wife's crying as its reason for affirming and continuing the protective order. Rather, the court determined that the

pushing[2] and hard-drive incidents were acts of domestic violence. Husband had the opportunity "to be heard, to present evidence, and to call and examine and cross-examine witnesses" on both incidents. *See* Ariz. R. Prot. Ord. P. 38(g)(1). The court did not violate due process. *See Savord*, 235 Ariz. at 259-60, ¶ 16.

**B.    The Superior Court Did Not Err by Issuing a Notice of Brady Indicator.**

¶20        Brady restricts firearm use after a protective order that:

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate

---

[2]        Husband does not challenge the court's reliance on the pushing incident on appeal. But Wife did not cite the pushing incident in her petition for the order of protection. *See* Ariz. R. Prot. Ord. P. 23(b)(1) ("In the petition, the plaintiff must . . . allege each specific act of domestic violence that will be relied on at [the] hearing[.]"). Allowing the plaintiff to testify about matters outside the petition may violate due process. *See Savord*, 235 Ariz. at 259-60, ¶ 16. But here, Husband's attorney invited Wife to testify about whether Husband ever struck her and did not object when Wife stated Husband pushed her. Husband has waived any due process issue about the court's finding on this issue. *See State v. Emedi*, 251 Ariz. 78, 82, ¶ 16 (App. 2021) (A defendant is ordinarily bound by his or her counsel's actions, and this rule applies "even to the waiver of protected constitutional rights.").

partner or child that would reasonably be expected to cause bodily injury[.]

18 U.S.C. § 922(g)(8).

**¶21**      Husband argues the superior court erred by (1) failing to provide him notice that he could be a prohibited possessor under federal law and (2) issuing a notice of Brady indicator absent a request by Mother. Husband also argues the superior court erred by issuing a notice of Brady indicator without first finding that Husband posed a credible threat to Wife. We address each argument in turn.

### 1.      The Superior Court Did Not Violate Due Process by Issuing a Notice of Brady Indicator.

**¶22**      Due process requires that a person subject to a protective order receive notice reasonably calculated to apprise the individual of the action. *Savord*, 235 Ariz. at 259-60, ¶ 16. But due process does not require a person subject to a state protective order to receive notice and fair warning of firearm restrictions under federal law. *United States v. Kafka*, 222 F.3d 1129, 1130-31 (9th Cir. 2000); *see also United States v. Meade*, 175 F.3d 215, 225 (1st Cir. 1999) (Even if the "state court restraining orders [do not] inform those whom they enjoin of the federal law consequences that may attach," it is not fatal to applying the Brady restrictions.); *United States v. Miles*, 238 F. Supp. 2d 297, 304 (D. Me. 2002). Still, Arizona participates in the Violence Against Women Act's STOP grant program. *See Stop Violence Against Women Formula Grant Program*, Off. on Violence Against Women (OVW), U.S. Dep't of Just., https://www.justice.gov/ovw/stop-violence-against-women-formula-grant-program (last visited Jan. 25, 2024) (listing Arizona); *STOP Violence Against Women*, Governor's Off. of Youth, Faith and Fam., https://goyff.az.gov/STOPGrant (last visited Jan. 25, 2024). Based on that acceptance, Arizona courts must notify individuals subject to protective orders about the possibility of being a prohibited possessor under federal law. *See* 28 C.F.R. § 90.14 (2016). Thus, Arizona courts notify protective order defendants of the potential federal consequences.

**¶23**      Here, Husband received notice of and an opportunity to contest the protective order, and the court warned Husband of possible consequences under federal law. The initial protective order served on Husband warned that the protective order could restrict his firearms under federal law. Husband had notice of this order because he requested a hearing to contest it. And the hearing request form Husband signed and

filed again warned Husband that federal law could restrict his firearms rights throughout the protective order.

¶24 Husband also argues the superior court erred because it issued a notice of Brady indicator without Wife requesting it. The federal statute does not require the person seeking a protective order to request a Brady notice. *See* 18 U.S.C. § 922(g)(8); *see also Flynn v. Flynn*, 2 CA-CV 2023-0073, 2024 WL 225218, at *4, ¶ 12, n.5 (Ariz. App. Jan. 22, 2024) ("Any federal restriction on Husband's firearms rights arose by operation of federal law once he became 'subject to' an order meeting § 922(g)(8)'s elements[.]"). The Brady notice issued by the superior court merely warned Husband of the federal consequences that arose from affirming the protective order.

### 2. The Superior Court Did Not Need to Find that Husband Represented a Credible Threat to Wife to Issue a Notice of Brady Indicator.

¶25 Husband contends "there was no evidence presented at trial that Husband posed a credible threat to Wife." Husband is correct that under Arizona's statute, the court must find "the defendant is a credible threat to the physical safety of the plaintiff or other specifically designated persons" to restrict a defendant's firearm use in a protective order. *See* A.R.S. § 13-3602(G)(4). And in that vein, "to determine whether the defendant poses a credible threat," the court "must ask the plaintiff about the defendant's use of or access to firearms." Ariz. R. Prot. Ord. P. 23(i)(1); *Flynn*, 2 CA-CV 2023-0073, at *3, ¶ 9.

¶26 But here, the court declined to invoke the Arizona firearms statute. More specifically, the superior court did not restrict Husband's firearm use—it merely notified Husband that he was subject to firearms restrictions under federal law. *See Flynn*, 2 CA-CV 2023-0073, at *4, ¶ 12, n.5;

*see also* 18 U.S.C. § 922(g)(8).[3] Thus, we limit our consideration to the application of 18 U.S.C. § 922(g)(8).

**¶27** As explained, Husband received actual notice of the hearing and had a chance to participate. *See* 18 U.S.C. § 922(g)(8)(A). Husband does not dispute that he is Wife's intimate partner. *See id.* § 922(g)(8)(B), (C); *see also id.* § 921(a)(32) (An "intimate partner" is a person's spouse or former spouse, a parent of the person's child, or someone who cohabitates or cohabitated with the person.). Finally, the order of protection restrained Husband from harassing or stalking Wife, *see id.* § 922(g)(8)(B), and it prohibited Husband from using, attempting to use, or threatening to use "physical force . . . that would reasonably be expected to cause bodily injury[,]" *see id.* § 922(g)(8)(C)(ii). The order fulfills the statutory requirements under federal law. *See id.* § 922(g)(8).

**¶28** But Husband relies on *Mahar v. Acuna* to argue that the court needed to make a specific finding that Husband represented a credible threat to Wife's safety. *See* 230 Ariz. at 534, ¶ 15. Husband misunderstands *Mahar*. In *Mahar*, the court held that a Brady notice was improper because *neither* prong of § 922(g)(8)(C) was satisfied—the court did not make a credible threat finding, and the protective order lacked language prohibiting physical force. *Id.* at 534-35, ¶¶ 16-17. In *Mahar*, the protective order contained only a general no-contact provision, so the Brady notice was defective because it did not satisfy the federal requirements under either 18 U.S.C. § 922(g)(8)(C)(i) or (ii). *See* 230 Ariz. at 534-35, ¶ 16.

**¶29** A review of the superior court records from *Savord v. Morton* reveals that the protective order in that case similarly did not prohibit the defendant from using, threatening, or attempting to use physical force under 18 U.S.C. § 922(g)(8)(C)(ii). Thus, to give a notice of Brady indicator, the superior court had to find that the defendant posed a credible threat to the plaintiff's physical safety under 18 U.S.C. § 922(g)(8)(C)(i), and this

---

[3] In *United States v. Rahimi*, 61 F.4th 443, 460-61 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023), the court held that 18 U.S.C. § 922(g)(8) was unconstitutional because it violated the Second Amendment. But Husband did not raise a Second Amendment challenge to the federal law in his appeal. "That the Supreme Court will review the constitutionality of § 922(g)(8) within the coming year does not obviate the need for this court to issue a decision in the present matter." *United States v. Brown*, 2:22-cr-00239, 2023 WL 4826846, at *1 (D. Utah July 27, 2023) (mem. decision).

court held there was no evidence supporting such a finding. *Savord*, 235 Ariz. at 260, ¶ 19. Still, in dicta, this court erroneously stated that a notice of Brady indicator is triggered *only if* the order includes a credible threat finding.[4] *See id.* at ¶ 20; *Flynn*, 2 CA-CV 2023-0073, at *5, ¶ 17.

**¶30** The federal statute does not always require the court to find that the defendant is a credible threat. *See* 18 U.S.C. § 922(g)(8)(C)(i), (ii). If the elements in subsections (A) and (B) are met, Brady is triggered either by a finding that the defendant represents a credible threat to the plaintiff's safety *or* a protective order that explicitly prohibits "the use, attempted use, or threatened use of physical force against" the person. *Id.* § 922(g)(8); *Flynn*, 2 CA-CV 2023-0073, at *3, ¶ 10; *United States v. Sanchez*, 639 F.3d 1201, 1204, 1206 (9th Cir. 2011); *see also Joseph v. United States*, 3:13-CV-00168, 2016 WL 3349214, at *7 (D. Conn. June 14, 2016) (mem. decision) (Because sections (C)(i) and (C)(ii) are disjunctive, only one clause needs to be satisfied.).

**¶31** Here, the protective order against Husband "by its terms explicitly prohibit[ed] the use, attempted use, or threatened use of physical force" against Wife. *See* 18 U.S.C. § 922(g)(8)(C)(ii). And while the evidence may have also supported a finding that Husband presented a credible threat to Wife's safety, the court did not need to make this finding for Brady to apply because the protective order contained the language required under § 922(g)(8)(C)(ii).

**¶32** Husband argues the court failed to question Wife about Husband's use of or access to firearms. Arizona Rule of Protective Order Procedure 23(i)(1) directs a court to ask the plaintiff about the defendant's firearm use to determine whether the defendant is a credible threat. Any error in failing to ask about his firearm use was harmless because the Brady notice did not require a separate credible threat finding, and in any event, both Husband and Wife's testimony revealed that Husband owned and used a firearm.

**¶33** Because Husband received actual notice and participated in the hearing, does not contest that he and Wife were "intimate partners,"

---

[4] We respectfully depart from past memorandum decisions that vacated Brady notices because of the dicta. *See, e.g.*, *Graves v. Slawson*, 1 CA-CV 20-0194 FC, 2021 WL 126731, at *4, ¶¶ 20-21 (Ariz. App. Jan. 14, 2021) (mem. decision); *Quezada v. Servin*, 1 CA-CV 20-0014 FC, 2020 WL 6834323, at *2, ¶¶ 8-9 (Ariz. App. Nov. 19, 2020) (mem. decision).

and the order explicitly prohibited Husband from harassing, stalking, or using or threatening to use physical force against Wife, the superior court did not err by issuing a notice of Brady indicator. *See* 18 U.S.C. § 922(g)(8).

## C.   The Superior Court Did Not Abuse Its Discretion by Affirming and Continuing the Protective Order.

¶34     The superior court "shall issue an order of protection" if it finds "reasonable cause" to believe "[t]he defendant may commit an act of domestic violence[,]" or "[t]he defendant has committed an act of domestic violence within the past year or within a longer period of time if the court finds that good cause exists to consider a longer period." A.R.S. § 13-3602(E)(1), (2).

¶35     Husband argues the court abused its discretion by continuing the order because he "presented uncontradicted videotape evidence of Wife coming at him and his car with a sledgehammer raised above her head while threatening Husband." He asserts, "[I]t was Wife, not Husband, who engaged in prohibited acts of domestic violence."

¶36     A court must issue a protective order if there is reasonable cause to believe that the defendant recently committed or might commit domestic violence. *See* A.R.S. § 13-3602(E)(1), (2). Because the court found that Husband committed two acts of domestic violence within the past year, it had to sustain the order. *See id.*

¶37     Husband also failed to preserve the video evidence in the record on appeal. *See State v. Schackart*, 190 Ariz. 238, 247 (1997) (Our review is limited to the record on appeal.). "[I]t is the responsibility of the party objecting to see that the record on appeal contains the material to which exception is taken. Failure to provide relevant portions can result in a presumption that the missing portions of the record support the action of the trial court." *State v. Berge*, 130 Ariz. 135, 136 (1981). While we can review the record, we cannot opine on the missing videos.

¶38     There is competent evidence supporting the court's domestic violence findings in this record. Assault is domestic violence if, among other qualifiers, the victim and the defendant were married, living in the same household, or had a child together. A.R.S. § 13-3601(A)(1), (2). A person commits assault by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person[,]" "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury[,]" or "[k]nowingly touching another person with the intent to injure, insult or provoke such person." A.R.S. § 13-1203(A).

**¶39** Wife testified that Husband threw the hard drive in her direction, and it just missed her because she "tucked into the bathroom when [she] saw it in the air." In her petition, Wife stated she was scared the hard drive would hurt her, so she moved out of the way. Thus, there was enough record evidence for the superior court to conclude that Husband intentionally placed Wife "in reasonable apprehension of imminent physical injury." *See* A.R.S. § 13-1203(A)(2).

**¶40** Wife also testified that Husband pushed her. Wife conceded she did not feel like she was in danger. But given Wife's testimony, her allegations that Husband harassed her several times, and the parties' hostile relationship, the court could reasonably conclude that Husband knowingly touched Wife to insult, injure, or provoke her. *See* A.R.S. § 13-1203(A)(3).

**¶41** Because there was competent evidence that Husband committed domestic violence, the superior court did not abuse its discretion by continuing the order of protection. *See Mahar*, 230 Ariz. at 534, ¶ 14.

## CONCLUSION[5]

**¶42** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] We note that Wife did not file an answering brief. "When debatable issues exist and an appellee fails to file an answering brief, we may consider such failure a confession of reversible error." *Savord*, 235 Ariz. at 259, ¶ 9. We decline to find Wife's failure as a confession because Husband has not raised a debatable issue.